**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne Lewallen,<br><br>            Plaintiff,<br><br>vs.<br><br>Home Depot USA, Inc.,<br><br>            Defendant. | No. CV-11-1639-PHX-NVW<br><br>**ORDER** |

      Before the Court is Defendant's Motion for Summary Judgment (Doc. 56).

      On March 22 and 23, 2013, Plaintiff filed a response to the Motion, a statement of facts, and a controverting statement of facts (Docs. 61, 62). Plaintiff's response to the Motion was due March 22, 2013. On March 25, 2013, without explanation or permission, Plaintiff filed a different version of her response to the Motion, a statement of facts, a controverting statement of facts, and some unidentified exhibits. (Docs. 63, 64, 65, 66.) On March 26, 2013, Plaintiff filed more unidentified exhibits. (Doc. 67.)

      One of Plaintiff's exhibits is her April 2, 2012 response to Defendant's motion for judgment on the pleadings; another is her previously filed Second Amended Complaint. Local Rules provide that "[n]o copy of a pleading, exhibit or minute entry which has been filed in a case shall be attached to the original of a subsequent pleading, motion or memorandum of points and authorities." LRCiv 7.1(d)(1). If a party wants to bring

attention to anything contained in a previous pleading, the party must do so by incorporation by reference. LRCiv 7.1(d)(2).

Despite Plaintiff's failure to comply with civil procedural rules and failure to seek leave to correct or amend her timely filed response, the documents filed as Docs. 63-67 will be construed as the final version of Plaintiff's response to the Motion for Summary Judgment, controverting statement of facts, and statement of additional facts.

Defendant's time to file a reply in support of its Motion for Summary Judgment has not expired, but it is unnecessary for Defendant to file a reply because Plaintiff has failed to show a genuine issue of material fact or that Defendant is not entitled to judgment as a matter of law.

## I.    LEGAL STANDARD

Summary judgment is proper if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and show there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

A party asserting that a fact cannot be disputed or that a fact is genuinely disputed must support the assertion by citing to specific parts of materials in the record or by showing that the materials cited do not establish the absence or presence of a genuine

dispute. Fed. R. Civ. P. 56(c)(1). "Citing to particular parts of materials in the record" means citing to specific pages and lines of depositions, documents, affidavits or declarations, or other materials that are already in the record or have become part of the record by submission on summary judgment. To support an assertion of fact, the citation must be to something that would be admissible in evidence with proper foundation. Assertions of fact must be supported by evidence, not merely by reference to allegations made in pleadings.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. 56(e)(2). Local Rule 56.1(b) provides:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party.

LRCiv 56.1(b).

## II.   UNDISPUTED FACTS

Plaintiff was hired by Defendant in 1996. Beginning in 2001, she was employed as a Return to Vendor ("RTV") associate. Plaintiff is a Mexican-American woman. In September 2009, Cynthia Camarillo (also known as Kat Katayama), Assistant Store Manager-Operations, began supervising Plaintiff. In February 2010, Melissa Perez, a Department Supervisor, became Plaintiff's direct supervisor under Camarillo. Both Camarillo and Perez are Mexican-American women.

- 3 -

Plaintiff's responsibilities as an RTV clerk included overseeing the process of returning merchandise to vendors that had been returned by customers or was otherwise marked down.  Beginning in 2006, Plaintiff's duties also included responsibility for properly disposing Hazardous Materials from the store and documenting that the store has followed Defendant's Handling Hazardous Materials ("HHM") policies, particularly keeping the HHM records updated on a daily basis.  On Mondays, Tuesdays, and Wednesdays, Plaintiff was expected to check the store's hazardous waste buckets between 6:00 a.m. and 8:00 a.m., empty them if they contained anything, and document completion of the tasks.  On other days, when Plaintiff did not begin her shift until 8:30 a.m., she was not responsible for checking and emptying the hazardous waste buckets.  Failure to complete the HHM protocols is considered by Defendant to be a Major Work Rule Violation, which subjects an employee to discipline up to and including termination, even for a first violation.

In October 2002, March 2003, and September 2009, Plaintiff's performance reviews show that she needed to improve maintaining a clean and uncluttered area, her punctuality/dependability, time management, and solving customers' problems.  In 2008, she was counseled for violating Defendant's dress code, and in 2010 or 2011 a customer complained about Plaintiff's low-cut shirt.  She was counseled that her two-inch long fingernails were a safety hazard and interfered with her physical work tasks.  In 2006, she was counseled for failing to complete her HHM tasks.

In March 2010, Plaintiff received an overall "improvement needed" rating on her performance evaluation and "improvement needed" ratings in the categories of respect, professionalism, learning, time management, and store appearance.  As a result, she was placed on a performance improvement plan.  As part of the plan, she met with her manager and was provided feedback and reviews.  She completed the improvement plan in late May 2010.  In June 2010, Plaintiff was disciplined for violating Defendant's

- 4 -

policies for yelling at a co-worker in front of a customer and warned that one more Code of Conduct violation would result in immediate termination of employment.

In January 2011, Plaintiff was disciplined for violating HHM procedures for failing to "complete and/or retain appropriate documentation of safety, hazardous material or fire code compliance activities." She was informed that she needed "to understand the severity and the importance of completing the Hazmat Checklist on a daily and timely basis. Hazmat Checklist needs to be complete by 8 a.m. NO EXCEPTIONS!" The notice served as her Final Counseling and informed her that any further HHM infractions would result in termination.

On April 22, 2011, Plaintiff was given notice that on April 19 and 20, 2011, she had "failed to empty the red waste cans in both paint and for the pipe fitting machine" and had "continued to sign off on the HHM automation that both cans were emptied when in fact they were not." The notice stated that Plaintiff's at-will employment was being terminated at that time.

In March 2010, Plaintiff began complaining about management practices related to "holding markdowns," which did not permit her to timely mark down or return merchandise and caused her area to be cluttered. She alleges that Camarillo retaliated against her for complaining about these practices by giving her a negative performance review in March 2010. The day after receiving the March 2010 review, Plaintiff called Defendant's employee complaint hotline to complain about the review. Plaintiff also complained about the review to her District Manager. But she did not complain to any manager or supervisor that she was treated unfairly in her March 2010 review because she was Hispanic. During the six months following her March 2010 review, she did not complain to any of Defendant's employees that she suffered any adverse action because of her race. In October 2010, Plaintiff again complained to her store manager that she and Camarillo had an angry conversation about RTV practices and markdowns of

- 5 -

merchandise.  She complained that Camarillo had yelled at her and was angry about Plaintiff's prior complaints about her negative March 2010 review.  Plaintiff testified that she was retaliated against because of her complaints about store markdown practices, her March 2010 performance review, and Camarillo's angry or hostile conversation with Plaintiff in October 2010.

Plaintiff does not recall Camarillo ever making discriminatory remarks against Hispanics.  The only comments by Camarillo that Plaintiff considered derogatory toward Hispanics were comments about Plaintiff's hair, length of nails, her makeup, and the appropriateness of her clothing for the workplace.

Plaintiff cannot recall complaining that Camarillo demonstrated any bias against Hispanic women in the store at any time.  Plaintiff did not complain that she was being discriminated against, harassed, or retaliated against based on her race.  She also did not complain that Hispanic associates were being discriminated against generally.  After her termination, Plaintiff alleged that two white employees violated HHM policies in April 2010 and were not terminated, but she did not know whether those employees were disciplined for the alleged violations.  While she was employed by Defendant, she did not complain about violations by the two white employees or complain that they were treated differently than she was.

Plaintiff's Second Amended Complaint alleges race discrimination, harassment because of her race, and retaliation for complaining of race discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended.

### III. ANALYSIS

#### A.   Race Discrimination

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In a Title VII employment discrimination case, courts apply a "shifting burdens" analytical framework at the summary judgment stage. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-04 (1973). The employee must first establish a prima facie case of discrimination. *Id.* at 802. The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its employment decision. *Id.* If the employer makes such a showing, the plaintiff must demonstrate that the articulated reasons are not its true reasons, but rather a pretext for discrimination. *Id.* at 804. A plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

To establish a prima facie case of discrimination under Title VII, a plaintiff must offer evidence from which unlawful discrimination can be inferred. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). This can be done through direct or circumstantial evidence of discriminatory intent or by showing four elements that create a presumption of discrimination: "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Id.* at 640 n.5.

Plaintiff is a member of a protected class, *i.e.*, Hispanic and/or Latino, and she suffered an adverse employment action, *i.e.*, termination. However, she has no direct evidence of race discrimination or evidence that other employees with qualifications

- 7 -

similar to her own were treated more favorably. Moreover, the evidence shows she was not performing to her employer's legitimate expectations. Because Plaintiff did not establish a prima facie case of discrimination, the burden does not shift to Defendant to articulate a legitimate non-discriminatory reason for its employment decision. However, Defendant has articulated several legitimate non-discriminatory reasons for its employment decision, and Plaintiff has not demonstrated that the articulated reasons are not its true reasons, but rather a pretext for discrimination.

### B.  Race Harassment

To establish a claim that racially based harassment created a hostile work environment, Plaintiff must show:  (1) she was subjected to verbal or physical conduct of a racial nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  *Vasquez*, 349 F.3d at 642.

Plaintiff testified that Camarillo criticized Plaintiff's hair, length of nails, her makeup, and the appropriateness of her clothing for the workplace because Camarillo did not like her, but she does not recall any comments or actions that would show Camarillo did not like her because she is Hispanic.  Plaintiff has not shown that she was subjected to verbal or physical conduct of a racial nature.

### C.  Retaliation

Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a).  To make out a prima facie case of retaliation, Plaintiff must establish that she undertook a protected activity under Title VII, her employer subjected her to an adverse employment action, and there is a causal link between those two events.  *Vasquez*, 349 F.3d at 646.

Plaintiff has not established that she opposed a practice that Title VII forbids. She does not recall complaining that she or anyone else was she was being discriminated against, harassed, or retaliated against based on race. She claims she was retaliated against because she complained about management practices regarding "holding markdowns," she complained about her March 2010 review, and she complained about Camarillo yelling at her in October 2010 for complaining about the March 2010 review. She has not made out a prima facie case of retaliation under Title VII.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 56) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiffs and that Plaintiffs take nothing. The Clerk shall terminate this case.

Dated this 19th day of April, 2013.

_____
Neil V. Wake
United States District Judge